Billy **AKERS**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2003–SC–1049–DG.

Supreme Court of Kentucky.

Sept. 22, 2005.

Damon L. Preston, Appeals Branch Manager, Department of Public Advocacy, Linda Roberts Horsman, Assistant Public Advocate, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ian G. Sonego, Brian T. Judy, Assistant Attorneys General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

Appellant, Billy Akers, was convicted in the Pike Circuit Court of first-degree stalking, fourth-degree assault, and two counts of second-degree unlawful imprisonment. He was sentenced to four years' imprisonment. On appeal, the Court of Appeals held that a discovery violation and an error with regard to the instructions on the misdemeanor charges warranted reversal of the unlawful imprisonment and assault convictions. However, the court affirmed the felony first-degree stalking conviction. This Court thereafter granted Akers' motion for discretionary review to consider two issues: (1) whether the discovery violation also warrants reversal of the felony stalking conviction, and (2) whether Akers was denied his right to peremptory challenges by the trial court's refusal to excuse a juror for cause. For the reasons set forth herein, we affirm in part, and reverse in part, the decision of the Court of Appeals.

In June 2001, Akers' wife, Ranie, and her fifteen-year-old daughter, Melissa, returned home one evening to find Akers waiting for them. Some months earlier, Ranie had obtained an emergency protective order (EPO) against Akers after he had choked her and threatened her life. The EPO prohibited Akers from coming within 1,000 yards of Ranie, as well as possessing any firearms in the home. However, the trial court thereafter granted Ranie's request to drop the no-contact provision so that she could attempt to reconcile with Akers.

Upon encountering Akers, Melissa tried to use the telephone and learned that Akers had disconnected the phone service. An argument between Akers and Ranie ensued, during which Ranie noticed that Akers had a gun. Thereupon, Ranie fled the trailer but was caught in the driveway

by Akers. Akers grabbed Ranie by the hair and arm and dragged her across the gravel driveway, back into the trailer. Akers then went to retrieve Melissa, who had also run out into the driveway. Akers grabbed Melissa and dragged her back into the trailer, hitting her head on the outside of the trailer as he did so. Akers thereafter ordered Ranie and Melissa to lie on the bed, and he handcuffed them together. The pair remained there for the rest of the night. Apparently, Akers would periodically threaten to kill them.

The following morning, Akers, who had previously been diagnosed with a heart condition, began complaining of chest pain. He uncuffed Ranie and Melissa, took a shower, and the three proceeded to the hospital. Akers evidently remained at the hospital and the two women returned to the trailer to find Kentucky State Trooper Kevin White waiting in the driveway. Trooper White had been dispatched to the residence after Ranie's employer reported that she had not shown up for work that morning. The two women informed Trooper White of what had transpired the previous night.

Akers was subsequently indicted by a Pike County Grand Jury of one felony count of first-degree stalking, one count of fourth-degree assault for the injuries Ranie sustained to her leg, and two counts of first-degree unlawful imprisonment.

At trial, the defense theory was that Ranie and Melissa had fabricated the entire incident. This was based, in large part, on the fact that there was no physical evidence. In particular, discovery provided to the defense included Trooper White's police report indicating that neither victim had suffered any injury. Thus, the defense intended to call into question the veracity of the victims' claims and argue that the Commonwealth could not prove an essential element of the assault charge.

However, when the Commonwealth called Trooper White to the stand, he testified as to the injuries Ranie sustained on her leg from being dragged across the gravel driveway. On cross-examination, defense counsel attempted to impeach Trooper White with the uniform offense report he completed, in which he checked the box indicating "no injury." Trooper White thereafter explained that the report defense counsel was referring to was for the unlawful imprisonment charge and, in fact, there was a separate report for the assault charge on which he did mark the injury box. Trooper White further testified that he also completed a "wound report" with respect to Ranie's leg injury.

Defense counsel then moved for a mistrial on the grounds that the Commonwealth had not complied with the trial court's discovery order. Counsel argued that its entire defense was that there was no physical proof of the incident in question, which was consistent with the police report the defense had been provided, but not with Trooper White's testimony and the second undisclosed report. While the Commonwealth conceded that it had a duty to provide the report to the defense if it existed, the Commonwealth claimed no knowledge of such. The trial court denied the motion on the grounds that the defense could not show it had been prejudiced by the Commonwealth's failure to provide the assault report.

On appeal, the Court of Appeals found that the Commonwealth was under a duty to disclose the report and the failure to do so constituted reversible error, but only as to the assault charge. The majority opined that because neither false imprisonment nor stalking requires proof of physical injury, the Commonwealth's failure to turn over the report did not prejudice

Akers or warrant reversal of those convictions.

■ RCr 7.26(1) provides:

Except for good cause shown, not later than forty-eight (48) hours prior to trial, the attorney for the Commonwealth shall produce all statements of any witness in the form of a document or recording in its possession which relates to the subject matter of the witness's testimony and which (a) has been signed or initialed by the witness, or (b) is or purports to be a substantially verbatim statement made by the witness. Such statement shall be made available for examination and use by the defendant.

As the Court of Appeals found, Trooper White's report on the assault charge clearly falls within the ambit of RCr 7.26 because it related to the subject matter of his testimony and was signed by him. *Maynard v. Commonwealth,* 497 S.W.2d 567 (Ky.1973). Furthermore, we agree that Akers was prejudiced by the Commonwealth's failure to provide him with the report since proof of an actual injury is an element of the fourth-degree assault charge. KRS 508.030. Evidence that Ranie sustained a physical injury was critical to the defense's trial preparation, and as such, its denial must be considered reversible error.

We depart, however, from the Court of Appeals' conclusion that the discovery violation only prejudiced Akers with respect to the assault charge. Akers' sole defense at trial was that the incident in question never occurred, and he necessarily relied on the absence of any physical evidence. Such trial strategy was certainly plausible, given that the Commonwealth had disclosed Trooper White's report in which he specifically checked the "no injury" box. Thus, when the undisclosed assault report came to light during trial, Akers' entire defense was unquestionably "gutted."

As Judge Buckingham noted in his dissenting opinion, had Trooper White testified only as to the false imprisonment report, the case would have simply been a "he said/she said" situation. However, once Trooper White confirmed the existence of the second undisclosed report, defense counsel's ability to cross-examine him was essentially eviscerated. *Anderson v. Commonwealth,* 864 S.W.2d 909 (Ky.1993); *Barnett v. Commonwealth,* 763 S.W.2d 119 (Ky.1988). Moreover, because all of the charges stemmed from the single incident, Akers ability to defend against any of them, not merely the assault charge, was substantially impaired.

■ The trial court has broad remedial powers under RCr 7.24(9). As we noted in *Weaver v. Commonwealth,* 955 S.W.2d 722, 725 (Ky.1997), "[a] discovery violation justifies setting aside a conviction 'only where there exists a reasonable probability that had the evidence been disclosed the result at trial would have been different.'" (*Quoting Wood v. Bartholomew,* 516 U.S. 1, 5, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995)); *see also Kyles v. Whitley,* 514 U.S. 419, 432–36, 115 S.Ct. 1555, 1565–66, 131 L.Ed.2d 490 (1995); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985). Here, the Commonwealth's failure to disclose Trooper White's assault report prejudiced Akers' ability to prepare a defense. Defense counsel labored under a misconception that there was no physical evidence. We cannot reasonably conclude that, had Akers' been provided the assault report, defense counsel would have proceeded in the same manner or the jury would have reached the same result. As such, all of Akers' convictions must be reversed.

Because this Court holds that the Commonwealth's discovery violation warrants reversal of all of Akers' convictions, we

necessarily do not reach the issue concerning Akers' claim that he was denied his peremptory challenges by the trial court's refusal to excuse a juror for cause.

Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part. Appellant's convictions for first-degree stalking, fourth-degree assault, and second-degree unlawful imprisonment are vacated and the matter is remanded to the Pike Circuit Court for a new trial consistent with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, ROACH, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents because the discovery violation did not require a mistrial and vacation is unwarranted.