William D. SLONE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000493–MR.

Supreme Court of Kentucky.

Oct. 25, 2012.

Emily Holt Rhorer, Kathleen Kallaher Schmidt, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, David Wayne Barr, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, William D. Slone, appeals as a matter of right, Ky. Const. § 110, from a judgment of the Campbell Circuit Court convicting him of first' degree rape, first-degree sodomy, of being a first-degree persistent felony offender, and fixing his sentence at thirty years' imprisonment.

As grounds for relief, Appellant raises the following issues: (1) that the trial court abused its discretion on the morning of the trial by granting the Commonwealth's motion for a continuance; (2) that the trial court erred by not permitting Appellant to cross-examine the victim' about her failure to appear on the first trial date; (3) that the trial court erred by permitting the victim to testify regarding her fear of getting a sexually transmitted disease (STD) from Appellant; (4) that a mistrial should have been granted when it was discovered mid-way through the trial that a final version of the sexual assault nurse-examiner's report had not been provided to the defense; (5) that the trial court erred by (a) failing to conduct a competency evaluation prior to trial, and (b) by failing to send him for further mental evaluation prior to sentencing; (6) that error occurred as a result of the prosecutor's comment during closing arguments that questioned why Appellant did not immediately tell police that he had had a consensual sexual encounter with the victim, an argument that Appellant construes as a comment on his right to remain silent; and (7) that the trial court erred by excusing a juror without sufficient cause.

For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2009, the alleged victim was at her sister's home when, late in the evening, she noticed Appellant's vehicle

parked at a nearby residence. The victim was acquainted with Appellant, and on an earlier occasion he had taken her to visit her children who lived in another county. Needing his assistance again, she went to talk to him at the nearby residence. There they began drinking, and then went to a bar where they continued to drink, and they listened to music and danced. The victim became intoxicated.

The victim claimed that after they left the bar, Appellant drove his truck into a parking lot, where he raped and sodomized her. When the sexual assault began, however, she discretely called 911 on her cell phone, and then set the phone on the floorboard. Consequently, the entirety of the assault was captured by the audio recording of the 911 call. It clearly depicts the victim's resistance to Appellant's effort to engage in sexual relations with her.

Using tracking technology, the police attempted without success to locate the source of the call. When the phone connection finally terminated, police called the number of the victim's phone, which was answered by the victim's sister. She told police the victim was there at her residence. The police arrived to find an extremely distraught woman who told police that Appellant had raped her, and that she feared contracting a sexually transmitted disease (STD) from him. She was taken to a hospital where a rape kit analysis was performed and she was provided prophylactic treatment for STD, including a twenty-eight day treatment for HIV.

Based upon the above events, Appellant was indicted for first-degree rape, first-degree sodomy, and being a first-degree persistent felony offender.

## II. GRANTING THE CONTINUANCE WAS A PROPER EXERCISE OF JUDICIAL DISCRETION

■ The case had been set for trial in early December of 2010 on the charges of first-degree rape and first-degree persistent felony offender. However, five days before that trial date, Appellant was indicted on the additional charge of first-degree sodomy. Because of the new charge, and the fact that the results of the DNA testing had just become available, the trial was continued without objection. The trial was rescheduled for February 1, 2011.

When the February 2011 trial date arrived, the victim failed to appear despite the fact that she had been served with a subpoena to command her presence at the trial. Over Appellant's objection, the trial court granted the Commonwealth's motion for a continuance. At the same time the trial court also released Appellant from jail on his own recognizance, and issued an arrest warrant for the victim. A new trial date was set. The trial court admonished the Commonwealth that if the victim again failed to appear, the case would be dismissed with prejudice. The victim was arrested and held in jail pending trial. Ultimately, she appeared at trial and testified consistently with the allegations contained in the indictments.

■ Appellant contends that the trial court erred by granting the Commonwealth's request to postpone the February trial. RCr 9.04 permits the trial court, upon motion and sufficient cause shown by either party, to grant a postponement of a hearing or trial. When ruling on a motion for a continuance the trial court must consider the facts of each case, especially the length of the delay; previous continuances; inconvenience to the litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; the complexity of the case; and whether denying the continuance will lead to identifiable prejudice. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 564 (Ky.2006). On

appeal, a trial court's decision to grant or deny a request for a continuance is reviewed under the abuse of discretion standard. *Id.; Wells v. Salyer,* 452 S.W.2d 392, 395–96 (Ky.1970) ("An application for a continuance is addressed to the sound discretion of the trial court and unless the discretion has been abused the action of that court will not be disturbed."). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

Application of the above factors demonstrates that the trial court properly granted the continuance. First, the delay was relatively short because the new trial date was set only seven weeks later. Although there had been a previous continuance, it was justified by the late return of the DNA test results and the new sodomy charge. Appellant was not unreasonably inconvenienced by the postponement, and as a result of the continuance he was released from jail, where he had been since his arrest a year earlier. Any inconvenience of the delay was at least somewhat mitigated by that important accommodation. Finally, denial of the continuance would have resulted in extreme, if not fatal, prejudice to the Commonwealth's case because it would have been extraordinarily difficult, although not impossible,[1] for the Commonwealth to present a viable case without the testimony of the complaining witness. Upon reflection of all relevant circumstances facing the trial court, we find no abuse of discretion in granting the continuance.

## III. CROSS–EXAMINATION OF THE VICTIM REGARDING HER FAILURE TO APPEAR ON THE FIRST TRIAL DATE

■ Appellant next contends that the trial court erred by not permitting him to cross-examine the victim in detail regarding her failure to appear on the February trial date, including the circumstances of her arrest for failure to appear, and that her testimony at trial was, at least in part, motivated by a desire to secure her own release from jail. Appellant contends that he should have been able to pursue this line of inquiry because these circumstances were relevant to the victim's credibility.

The trial court ruled that Appellant would be permitted to question the victim concerning her failure to appear for the February trial date, but because of undue prejudice to the Commonwealth, the victim could not be questioned about her arrest and detention on the material witness warrant.

■ We first note that our review is hampered by the fact that Appellant did not make an offer of proof pursuant to KRE 103(a)(2), which, in the case of a ruling excluding evidence, requires the proponent of the evidence to make known to the court "the substance of the evidence" sought to be presented, unless the substance "was apparent from the context within which questions were asked."[2]

1. The audio recording of the assault, the DNA evidence (which was a conclusive match for Appellant), and other physical evidence could possibly have resulted in a conviction, but the absence of the victim could well have resulted in the jury finding reasonable doubt.

2. "In contrast to earlier versions of KRE 103, the current version does not require the presentation of avowal testimony to preserve the issue of a trial court's exclusion of testimony." *Weaver v. Commonwealth,* 298 S.W.3d 851, 857 fn. 12 (Ky.2009). However, the trial court, at its discretion, may direct the offer be by avowal. KRE 103(b) ("Record of offer and ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling

While we have some idea what defense counsel's questions would have been, without the avowal responses of the victim, it is difficult to fully determine how the trial court's ruling prejudiced Appellant.

■ In any event, the matter under review is an evidentiary issue, and the trial court's decision concerning whether to exclude evidence is reviewed pursuant to the abuse of discretion standard. *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006). Appellant, in essence, argues that the victim's reluctance to appear voluntarily as a witness suggests a lack of veracity. He reasons that she would have appeared as a willing witness if she was being truthful about her claim that Appellant forcefully raped and sodomized her. However, that is a flawed proposition in the first instance. For example, it would be at least equally likely that the reason she did not appear was because of the inherent humiliation and distress associated with being a victim in a rape trial; or, she may have been pressured not to appear in the case.[3] The reason for her failure to appear is not self-evident, and thus its relevance would be pure conjecture. The trial court did not abuse its discretion by excluding evidence associated with her compelled attendance at the March trial. *Terry v. Commonwealth*, 153 S.W.3d 794, 801 (Ky.2005) ("the fact of [a witness's] failure to appear at a sentencing hearing is not probative of his character for untruthfulness."); KRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury....").

## IV. EVIDENCE OF VICTIM'S FEAR OF CONTRACTING A SEXUALLY TRANSMITTED DISEASE

■ Appellant next contends that the trial court erred by permitting the Commonwealth to elicit testimony from the victim that she feared getting sexually transmitted diseases from Appellant. Appellant contends that this evidence was improperly admitted because it was irrelevant.

It was ascertained in pretrial proceedings that the victim believed that Appellant had had sex with a prostitute prior to his attack on her, and thus feared that he might carry a sexually transmitted disease. Indeed, during the recording of the assault, Appellant can be heard trying to convince the victim that he did not have a sexually transmitted disease. Other evidence in the record tends to corroborate that in the aftermath of the incident, the victim was extremely concerned that she may have contracted a disease.

To be admitted at trial, the evidence must be relevant. KRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403; *Moor-*

---

thereon. It may direct the making of an offer in question and answer form.").

**3.** It appears from the record that the victim's "excuse" for not appearing at the first trial (according to the Commonwealth) was "car trouble"; however, the trial court indicated that it would not accept this excuse without corroboration, and thus there is no finding or testimony in the record of exactly why the victim did not appear on the February trial date.

*man v. Commonwealth,* 325 S.W.3d 325, 332–33 (Ky.2010).

It is self-evident that the fear of a sexually transmitted disease is relevant to the issue of consent in a rape case. At a pretrial hearing, it was determined that the victim believed that Appellant had had sex with a prostitute[4] and that she thus feared he had an STD. It is elementary that a person is less likely to engage in consensual sex with one who is believed to have an STD. Accordingly, the evidence was relevant to show that the victim had such a belief. The trial court did not abuse its discretion by permitting her to testify concerning her fear of contracting a disease from Appellant.

## V. FAILURE TO DISCLOSE SANE NURSE'S FINAL REPORT

Appellant next contends that the trial court erred by failing to grant a mistrial when it was disclosed midtrial that defense counsel had not been given the final report of sexual assault nurse examiner (SANE) Missy Rittinger. During the discovery process, the Commonwealth provided defense counsel with a report prepared by Nurse Rittinger. However, during the course of defense counsel's cross-examination of Nurse Rittinger it was determined that she had prepared a more recent and more complete report, which had not been turned over to the defense. The principal additions to the final report related to the victim's concern over sexually transmitted diseases and the preemptive treatment administered as a result.

"A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth,* 68 S.W.3d 375, 383 (Ky.2002).

"The standard for reviewing the denial of a mistrial is abuse of discretion." *Id.* It is well established that a discovery violation may form the basis for a mistrial, *Akers v. Commonwealth,* 172 S.W.3d 414, 417 (Ky. 2005) (an appellate court may set aside a conviction if a discovery violation creates "a reasonable probability that had the evidence been disclosed the result at trial would have been different.").

Here, the difference in the two reports principally concerned the same STD issues that were brought into evidence in other contexts. Appellant has utterly failed to identify how having the final version of the report in advance of trial would have aided his defense to the extent of creating the slightest possibility of a different result at trial, much less a reasonable probability of a different result. Further, Appellant was able to discredit the Commonwealth by arguing that it had tried to hide the final version of the final report by not disclosing it prior to trial.

In summary, there was nothing exculpatory in the final report that was not in the original version that would have been particularly useful in trial preparation. The STD issue was thoroughly addressed in pretrial proceedings, and thus there was no surprise associated with the late disclosure of the final version. As such, the trial court did not abuse its discretion by denying Appellant's motion for a mistrial.

## VI. COMPETENCY EVALUATION

Appellant next contends that the trial court erred (a) when it failed to order a pre-trial competency evaluation, and (b) when, after allowing a post-trial outpatient competency evaluation, it denied his request to be sent to KCPC for further medical testing before sentencing.

4. Over the Commonwealth's objection, this fact was excluded from the evidence.

## A. PRE–TRIAL COMPETENCY EVALUATION

On the morning of trial, a KRE 412 rape shield hearing regarding the admissibility of the victim's prior sexual history was held. Appellant testified at the hearing. On direct examination he was asked about any prior sexual contact he had with the victim. He stated that he could not remember dates because of a bad head injury he sustained in 2005 "that made him incompetent." On cross-examination Appellant testified that his head injury was a result of being assaulted with a claw hammer. He said that as a result of the injury, he had "died" in surgery but was revived. Because of the head injury he has frequent seizures, he must have someone with him at all times, and he cannot count or handle money. He also said that he took medication for his seizures; and, that while he was not supposed to drink while taking the medication, he did so frequently.

Later that day, during a break injury selection, the trial court raised the issue of competency on its own initiative, obviously concerned about the testimony in the rape shield hearing. Defense counsel responded that she believed Appellant was competent to stand trial.

KRS 504.100(1) requires a court to appoint a psychologist or psychiatrist to examine, treat and report on the defendant's mental condition whenever the court has reasonable grounds to believe that the defendant is incompetent to stand trial. KRS 504.060(4) defines incompetency to stand trial as where, because of a mental condition, the defendant lacks the capacity to appreciate the nature and consequences of the proceedings against him or to participate rationally in his own defense. The standard of review in regard to holding a competency hearing is, "[w]hether a reasonable judge ... should have experienced doubt with respect to competency to stand trial." *Mills v. Commonwealth*, 996 S.W.2d 473, 486 (Ky.1999) § *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010).[5] "It is within the trial court's discretion to determine whether there are 'reasonable grounds' to believe a defendant may be incompetent to stand trial." *Bishop v. Caudill*, 118 S.W.3d 159, 161 (Ky. 2003). "However, once facts known to the trial court are sufficient to place a defendant's competency at issue, an evaluation and evidentiary hearing are mandatory." *Id.; Gray v. Commonwealth*, 233 S.W.3d 715, 718 (Ky.2007).

In this case, the trial court did not err by failing, upon its own motion, to order a pretrial competency hearing. Appellant does not allege that there were any signs of incompetency during the long period of trial proceedings leading up to the KRE 412 hearing. Moreover, when, because of Appellant's comment about being "incompetent," the trial court raised the question of incompetence with the prosecutor and defense counsel, defense counsel affirmed Appellant's competence to stand trial. There being no contrary evidence to support a reasonable belief that Appellant's head injury resulted in his incompetence to stand trial, the trial court did not err in failing to order *sua sponte* a pretrial competency examination.

## B. POST–TRIAL, PRE–SENTENCING COMPETENCY EVALUATION

---

5. *Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky.2010), holds that the statutory right to a competency hearing may be waived, but if there is substantial evidence that a defendant is incompetent, and thus the constitutional right to a hearing attaches, the trial court must conduct a competency hearing, at trial or retrospectively, even if both counsel and the defendant expressly waive it.

Despite defense counsel's prior assurances that Appellant was competent to stand trial, after the trial but before final sentencing, she requested a competency evaluation of Appellant. In response, the trial court issued an order that KCPC or its designee evaluate Appellant for competency to stand trial.

Appellant was examined by Dr. Stephen Sparks, a contract psychologist for KCPC. At the subsequent competency hearing, Dr. Sparks reported that he had concluded that Appellant was competent. He stated that his evaluation was hindered because Appellant would not authorize the release of his medical records. He further reported that Appellant had engaged in extensive malingering during the evaluation. When asked by the trial court if Appellant was competent to stand trial, Dr. Sparks responded "very much so."

At the conclusion of the hearing, the trial court stated that it had never had any doubt about Appellant's competence, and only ordered the evaluation "in an abundance of caution." She also expressed skepticism at Appellant's claim of incompetency because Appellant had refused to sign a release to allow inspection of his medical records. Thus, the trial court found that Appellant had been competent to stand trial, and was then competent to be sentenced.

With Dr. Sparks examination and conclusions, and in the absence of any other evidence that Appellant was at any time incompetent to stand trial, the trial court did not err in finding Appellant to have been competent to stand trial at all relevant times, or by not sending him for further in-patient testing at KCPC.

## VII. COMMENT ON APPELLANT'S RIGHT TO REMAIN SILENT

Appellant next argues that error occurred when, during closing arguments, the prosecutor commented on why Appellant, in response to police questioning, denied being in the vicinity of the assault instead of telling police that he had a consensual sexual encounter with the victim. Appellant construes the prosecutor's remark as an improper comment on his right to remain silent.

During his testimony, Bellevue Police Major Leland Estep testified that when he initially interviewed Appellant, he told Appellant that he was investigating a possible sexual assault in Bellevue that evening. Appellant responded that he was not in Bellevue that evening.

During closing arguments the prosecutor asked the jury to consider "why would an innocent man say [to police] he wasn't there that night?" The prosecutor then asked the jury why Appellant did not instead respond, "Hey, I had consensual sex with [the victim] last night so if she's accusing me of something....", at which point defense counsel objected.

Defense counsel argued to the trial court that the prosecutor was commenting upon Appellant's right to remain silent. The court responded that since Appellant had voluntarily spoken to police, the Commonwealth could comment on his statement. Nevertheless, the trial court cautioned the prosecutor to go no further than that. The prosecutor then continued:

> As I was saying, he could have told the officer, "I had consensual sexual intercourse with [the victim], and if she's falsely accusing me of something I want it fixed right now." Did he do that? No he stuck with the "I wasn't even there" story. Those are not the words of an innocent man. If it was consensual that would be the first thing out of his lips.

It is fundamental that a prosecutor may not comment upon a defendant's

exercise of his right to remain silent.[6] Here, however, as near as we can tell, Appellant at no time exercised the right to remain silent. Instead, he voluntarily spoke with police about the events in question, and he denied being in the vicinity where the alleged attack had occurred. The prosecutor was not, as suggested by Appellant, commenting upon his invocation of the right to remain silent. Appellant never invoked the right. The prosecutor was clearly commenting upon Appellant's apparently false statement that he was not in the vicinity when the crimes occurred. We see no commentary at all by the prosecutor concerning Appellant's right to remain silent.

Rather than a comment on post-arrest silence, the prosecutor here was arguing that Appellant's statement was not credible, and by contrasting it with Appellant's later claim that he had consensual sex with the victim. We have "repeatedly held that a prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence." *Driver v. Commonwealth,* 361 S.W.3d 877, 889 (Ky.2012). The commentary at issue here did not attempt to draw an inference from Appellant's silence because there was no silence. Instead, she was commenting on the inference that can be drawn from Appellant's false statement that he was not involved in the incident, and noting the reasonable inference from the evidence that if he had engaged in

lawful sexual activity with the victim, he would have told the truth to police about where he was and who he was with. Therefore, no error occurred as a result of the prosecutor's comments.

## VIII. JUROR 278

■ Appellant next contends that the trial court erred by striking juror 278 for cause. Juror 278 disclosed during voir dire that he had twice been prosecuted for criminal non-support. While the first case was dismissed, the second was resolved by a plea bargain negotiated with the very prosecutor assigned to this case.

In discussions about how this may affect his ability to sit as a juror, Juror 278 stated that he accepted the plea deal only because he did not have the funds to fight it; that he felt that the charges against him were not "true and fair"; and that there were a lot of underlying issues that were "never looked into, I don't think, before charges were even filed." He also stated that he had a problem with the fact that "anybody can walk into the clerk's office and fill out a piece of paper and you wind up here whether you did anything or not, with intent."

Upon questioning about whether this would affect his ability to be fair, Juror 278 stated that "but, being on this side of the table, it's uh, ... I should be fair and impartial, but honestly, my personal feel-

---

**6.** It does not appear that Appellant was in custody when he spoke to police, so as to implicate the *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), line of cases. Rather, this appears to be more of a pre-arrest silence case, an area of unsettled law. *See Combs v. Coyle,* 205 F.3d 269, 282–83 (6th Cir.2000) (discussing circuit split as to "whether the government may comment on a defendant's pre-arrest silence in its case-in-chief....."); *C.f. Green v. Commonwealth,* 815 S.W.2d 398, 400 (Ky.1991) (the Common-

wealth may not use a defendant's post-arrest silence as evidence of guilt). But it is unlikely that if Appellant had, for instance, refused from the outset to talk to Major Estep, it would be proper for Estep to testify at trial, "I tried to talk to the defendant but he refused to talk to me and therefore did not deny the assault," followed by the prosecutor's exploitation of that in a similar manner as here. But of course that is far from what actually happened.

ings are, makes it probably difficult if I was honest with myself"; and that "I just know I've been on the other side of the table. I don't honestly know how I would lean. It would honestly depend on the evidence and testimony presented on both sides. But I've been in that seat before so I know what that's like." Juror 278 further stated that as a result of his experience he would "scrutinize the Commonwealth a little bit more than typical."

RCr 9.36(1) provides that "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." Long-standing Kentucky law has held that a trial court's decision on whether to strike a juror for cause must be reviewed for abuse of discretion. *Adkins v. Commonwealth*, 96 S.W.3d 779 (Ky.2003); *Pendleton v. Commonwealth*, 83 S.W.3d 522, 527 (Ky.2002). The court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor. There is no "magic question" that can rehabilitate a juror, as impartiality is not a technical question but a state of mind. *United States v. Wood*, 299 U.S. 123, 145–46, 57 S.Ct. 177, 81 L.Ed. 78 (1936); *Pennington v. Commonwealth*, 316 S.W.2d 221 (Ky.1958); *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky.2007).

Juror 278 essentially admitted that he would find it difficult to be fair to the Commonwealth as a result of his experience with this prosecutor. As such, the trial court did not abuse its discretion by excusing Juror 278 for cause.

## IX. CONCLUSION

For the foregoing reasons, the judgment of the Campbell Circuit Court is affirmed.

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and SCOTT, JJ., concur. SCHRODER, J., not sitting.