# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: FEBRUARY 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0521-MR

CHRISTOPHER WHITTAKER                                    APPELLANT

V.

ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M. SUMME, JUDGE
NO. 22-CR-00316-001

COMMONWEALTH OF KENTUCKY                                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Christopher Whittaker committed multiple heinous physical and sexual acts against M.B.,[1] W.B., and I.H., and the family cat. He was charged[2] with ten counts of sodomy in the first degree, thirty-seven counts of promoting a sexual performance by a minor, sixteen counts of criminal abuse in the first degree, seven counts of sexual abuse in the first degree, two counts each of rape in the second degree and sodomy in the second degree, eight counts of possession of matter portraying a sexual performance by a minor, one count

---

[1] We use initials to protect the privacy of the minor victims. *See* Kentucky Rules of Appellate Procedure (RAP) 31(B).

[2] Eight of the charges alleged Whittaker acted in complicity with his fiancée, who was the biological mother of two of the minor victims. In a further effort to protect the minor victim, we will not use the mother's name in this Opinion but shall refer to her simply as "Mother" unless the context requires otherwise.

each of rape in the third degree and sodomy in the third degree, and eight counts of torture of a dog or cat.  Whittaker entered an open guilty plea to all charges and, following a sentencing hearing, the Kenton Circuit Court fixed his punishment at life imprisonment.  He now appeals as a matter of right.[3] Following a careful review, we affirm.

Whittaker raises two allegations of error on appeal, both of which occurred during the sentencing hearing.  Thus, a detailed recitation of facts is unnecessary to resolve this appeal because the facts underlying Whittaker's offenses are only tangentially relevant to the issues presented.  Suffice it to say, Whittaker subjected M.B. to innumerable instances of illicit sexual contact which were memorialized in photographs and digital videos.[4]  Thousands of photos and videos were discovered on Whittaker's electronic devices.[5]  The recordings revealed sexual contact began when M.B. was nine years old and continued for several years.  Multiple instances of physical abuse of W.B.— Mother's disabled seven-year-old son who suffers from cerebral palsy, is non-verbal, and has a feeding tube placed in his stomach—were also recorded on

---

[3]  KY. CONST. §110(2)(b).

[4]  The majority of the abuse centered around Whittaker's admitted BDSM-style foot fetish which included acts of "trampling" wherein sexual arousal or pleasure is derived from a dominant person walking or stepping on a submissive person or from watching same.  It could also include the dominant person walking on other people, animals, or inanimate objects.  In this instance, Whittaker was the submissive person.

[5]  In several of the videos located by police, both M.B. and Mother are seen walking on Whittaker while in various stages of undress.  Other videos and photographs showed M.B. and Whittaker performing oral sex on one another.  Still other videos contained scenes of Whittaker penetrating M.B.'s vagina with his penis, fingers, or a hairbrush.

video and Whittaker can be heard directing the abuse. Police also located multiple nude images of other minors which Whittaker had solicited through various social media applications while posing as W.B. They were able to identify one victim as I.H. Finally, several videos were located revealing Whittaker directing M.B. to walk on the family cat on several different occasions.

Following a period of discovery and motion practice, Whittaker entered a guilty plea and, in a lengthy allocution, detailed the acts underlying each of the charged crimes. After two continuances, a separate sentencing hearing was convened on September 19, 2023. Whittaker's two allegations of error arose relative to that hearing.

During the direct examination of the investigating detective, the Commonwealth inquired whether the investigation had revealed whether Whittaker had engaged in his trampling fetish with other people before his current fiancée or had previously subjected a child to trampling. Whittaker objected, asserting only an allegation of such acts existed and that he had not been convicted of any criminal offense relative to those allegations. The Commonwealth asserted a video had been found showing a young child in diapers being trampled by a woman while Whittaker's voice could be heard[6] and Whittaker had pending criminal charges in Grant County stemming from

---

[6] The Commonwealth had previously given notice pursuant to Kentucky Rules of Evidence (KRE) 404(c) of its intent to introduce this video and the matter was discussed during a lengthy hearing.

3

that incident. Whittaker then changed tack and argued the video was not relevant to the sentencing issues being presented to the trial court. The trial court disagreed, concluding it was appropriate to receive information about pending charges in sentencing. Additional foundation questions were asked and answered before the Commonwealth played the video for the trial court.

The day before the scheduled sentencing hearing, the Commonwealth produced approximately 365 pages of "Chirps"[7] purportedly sent by Whittaker while he was incarcerated. Three additional pages of Chirps were produced on the morning of the hearing which were messages Whittaker sent the evening prior. Defense counsel objected to the Commonwealth using any of the Chirps based on the voluminous number of messages[8] and the lateness of production, asserting he had insufficient time to review them, discuss them with his client, or provide them to his mitigation expert. The Commonwealth indicated it did not intend to introduce all of the messages but only a select few for impeachment purposes should Whittaker testify that he was remorseful and wanted treatment. It explained that on the day before sentencing the defense had forwarded copies of year-old emails which Whittaker had sent to various mental health providers seeking to obtain sex-offender treatment. Receipt of

---

[7] Chirps are a means of communication between jail inmates and others outside the facility which are similar to text messages.

[8] Defense counsel estimated the number of messages produced to be in excess of 2700.

those emails prompted a review of the Chirps for statements inconsistent with a recognition by Whittaker of wrongdoing.

After hearing the parties' arguments, the trial court declined Whittaker's request for a continuance and indicated it would rule on the admissibility of the Chirps if and when the Commonwealth sought to utilize them. The trial court was persuaded, at least partially, by the fact the statements were Whittaker's own and defense counsel should have been aware he had been making statements.

During cross-examination, the Commonwealth referenced a series of Chirps between Whittaker and his mother and another set of exchanges between Whittaker and the girlfriend of another inmate. In response to Whittaker's testimony claiming remorse and taking responsibility for his actions, the Commonwealth asked whether he had told his mother that he was a victim, M.B. was the reason he was in trouble, and M.B. needed to change her story. Whittaker conceded to making those statements. He was also asked whether he had told the other inmate's girlfriend he was a victim and he did not deserve to be given a 30-year sentence. Whittaker also agreed he had made those statements. The Chirps themselves were not introduced into evidence and the entirety of the exchange covered less than three minutes of the three-hour hearing.

Whittaker now asserts the trial court erred in permitting the Commonwealth to present evidence of allegations of trampling from an untried charge in another county. He further contends the trial court erred in refusing

5

to exclude the use of his Chirps for impeachment. Thus, he contends the sentencing hearing was impermissibly tainted resulting in his inability to inform the trial court as to what he believed was an appropriate sentence.

Trial courts are afforded "immense discretion" in setting criminal sentences, and sentencing issues are reviewed for an abuse of discretion. *Howard v. Commonwealth,* 496 S.W.3d 471, 475 (Ky. 2016). Appellate courts review a trial court's decision under this standard to determine if it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999). However, before discussing the merits of his arguments, we must first address the Commonwealth's contention that Whittaker's claims should be rejected out of hand because his open and unconditional guilty plea constituted a waiver of his right to appeal the sentencing issues he now raises.

It is true that entry of an unconditional plea vastly "*reduces* the scope of potentially appealable issues." *Windsor v. Commonwealth,* 250 S.W.3d 306, 307 (Ky. 2008) (quoting *Roe v. Flores-Ortega,* 528 U.S. 470, 480 (2000)). Generally, unconditionally pleading guilty waives all defenses except that the indictment did not charge an offense. *See Bush v. Commonwealth*, 702 S.W.2d 46, 48 (Ky. 1986). However, there are issues which survive such an express waiver, including "competency to plead guilty; whether the plea complied with the requirements of *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); subject matter jurisdiction and failure to charge a public

6

offense; and sentencing issues." *Windsor*, 250 S.W.3d at 307 (footnotes and citations omitted).

> The cases cited in *Windsor* make clear that the phrase "sentencing issues" does not refer to any issue that arguably affected the ultimate sentence imposed. Instead, it refers to a claim that a sentencing decision is contrary to statute, as in *Ware* [*v. Commonwealth*, 34 S.W.3d 383 (Ky. App. 2000)]*,* or was made without fully considering what sentencing options were allowed by statute, as in *Hughes* [*v. Commonwealth*, 875 S.W.2d 99 (Ky. 1994)]. Such sentencing issues are "jurisdictional," *Cummings v. Commonwealth,* 226 S.W.3d 62, 66 (Ky. 2007), and thus they may be raised on appeal even from an unconditional guilty plea.

*Grigsby v. Commonwealth*, 302 S.W.3d 52, 54 (Ky. 2010). The issues presented in this appeal do not concern a sentence which exceed statutory maximums or is otherwise legally infirm, but rather present challenges to evidentiary rulings made by the trial court at the sentencing hearing. At bottom, Whittaker alleges the trial court failed to fully consider the possible sentences it could have imposed because it weighed impermissible facts when sentencing him to spend life in prison. Thus, because Whittaker's claims fall within the purview of the limited class of errors which survive an unconditional guilty plea and are therefore eligible for appellate review, we will consider whether the trial court abused its discretion when sentencing him.

Whittaker first alleges the trial court erroneously permitted the Commonwealth to introduce evidence of an alleged crime committed in a different county for which he had not been tried. He asserts the video depicting a mother trampling on her child while he can be heard talking was irrelevant and unduly prejudicial. Like sentencing issues, evidentiary rulings

7

are reviewed for an abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007).

Trial courts have wide latitude in considering evidence relative to sentencing and have a duty to consider the nature and circumstances of the specific crimes for which a defendant has been convicted or pled guilty, and the history, character, and condition of the defendant. *See* KRS[9] 533.010. This includes the contents of a presentence investigation (PSI) report and, in cases such as this, the presentence sex offender evaluation. However, for purposes of sentencing, trial courts are not bound to consider only the information presented in the PSI or presentence sex offender evaluation and are not confined to the four corners of any such reports. Indeed, trial courts may consider information which could have been included in such reports as well as any other instructive evidence relevant to the sentencing decision.

Further, the evidentiary limitations for sentencing purposes set forth in KRS 532.055(2)(a) are applicable only to juries, not to the trial court. Certainly, evidence tending to show Whittaker engaging in similar criminal conduct to that for which he stood convicted was relevant to the trial court's determination as to his sentence. Additionally, the sentencing authority granted to trial courts is not limited by the rules of evidence or traditional rules of pleading. RCr[10] 1101(d)(5). While the proffered video contained graphic and disturbing images, contrary to Whittaker's contention, that alone is insufficient

---

[9] Kentucky Revised Statutes.

[10] Kentucky Rules of Criminal Procedure.

to conclude the trial court abused its discretion in admitting the evidence. There was no error.

For his final contention, Whittaker asserts the trial court erroneously refused to exclude the late-produced Chirps and compounded the error when it permitted the Commonwealth to cross-examine him using the contents of those messages. He argues the belated production violated the rules of discovery and his due process rights.

For purposes of this argument, we will assume the Commonwealth failed to timely disclose the Chirps in contravention of RCr 7.24(1)[11] and therefore committed a discovery violation.[12] We are troubled by the Commonwealth's tardy production of a voluminous trove of messages which had been in its possession for a lengthy period of time, perhaps as long as two years. Dumping such a large amount of information on the defense mere hours prior to the sentencing hearing offends our sense of fair play and borders on

---

[11] RCr 7.24(1) states, in pertinent part:

> Upon written request by the defense, the attorney for the Commonwealth shall disclose the substance, including time, date, and place, of any oral incriminating statement known by the attorney for the Commonwealth to have been made by a defendant to any witness, and to permit the defendant to inspect and copy or photograph any relevant (a) written or recorded statements or confessions made by the defendant, or copies thereof, that are known by the attorney for the Commonwealth to be in the possession, custody, or control of the Commonwealth[.]

[12] The trial court entered a discovery order on April 7, 2022, obligating the Commonwealth to produce, among other items, those required under RCr 7.24. Although Whittaker subsequently challenged the timeliness of the production of the Chirps, he did not mention the discovery order as a basis for his objection. Further, the trial court did not specifically rule that the Commonwealth had violated its order, nor did it find a discovery violation occurred.

gamesmanship. While the Commonwealth indicated it intended to—and ultimately did—use only a small portion of the messages for impeachment purposes, it made absolutely no effort to pare down the thousands of messages to remove the content it had no intention of ever using. Nor did the Commonwealth indicate why it failed to do so. "The overarching purpose of our criminal discovery rules is to prevent '[a] cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused.'" *Stieritz v. Commonwealth*, 671 S.W.3d 353, 368 (Ky. 2023) (quoting *James v. Commonwealth*, 482 S.W.2d 92, 94 (Ky. 1972)). Considering Whittaker's allocution and the heinous nature of his crimes—which were captured on video or in photographs—the marginal benefit to the Commonwealth of impeaching Whittaker's newfound claim of remorse pales in comparison to the risk of injecting reversible error at such a late stage because of an easily-avoidable discovery violation. In fact, the need for the Chirps as an aid in sentencing in light of the overwhelming evidence of guilt seems questionable at best. Nevertheless, and despite our discontent with its actions, the Commonwealth's discovery violation here does not result in an automatically mandated reversal.

"A trial court possesses 'broad remedial powers' to address discovery violations. *Akers v. Commonwealth*, 172 S.W.3d 414, 417 (Ky. 2005); RCr 7.24(11)." *Id.* (footnote omitted). If a violation is discovered, the trial court may "direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from

10

introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances." RCr 7.24(11). Thus, complete exclusion of the Chirps was but one potential remedy left to the discretion of the trial court. Reversal is warranted when the trial court abuses its discretion, but "'only where there exists a reasonable probability that had the evidence been disclosed the result at trial would have been different.'" *Stieritz*, 671 S.W.3d at 368 (quoting *Akers*, 172 S.W.3d at 417). "Some prejudice must be found, or the error, if any, is harmless." *Gosser v. Commonwealth*, 31 S.W.3d 897, 905 (Ky. 2000).

Whittaker asserts the failure to exclude the Chirps resulted in devastating consequences to his defense. He contends the defense strategy of arguing his decision to enter a guilty plea showed he accepted responsibility and was remorseful for his actions "might have been radically different" had he known about the contents of the Chirps in a timely manner. He believes the discovery violation impermissibly tainted the entirety of the sentencing hearing, thereby mandating reversal. We disagree.

First, we cannot say the trial court abused its discretion in not excluding the Chirps. The trial court was made aware of the potential discovery violation but was also informed by the Commonwealth that it intended to use only a select few of the messages to impeach Whittaker with his own inconsistent statements should he testify to being remorseful and accepting responsibility for his actions. In response to the parties' arguments, the trial court stated:

> we'll just start moving forward and see where it lands.
> And I think, as this isn't to a jury it's to a judge, I can

11

> certainly weigh how they come in and what they do and whether you have more of an opportunity to do with them and how the Commonwealth is going to use them. I don't know how hearings are going to go until they start.

When the Commonwealth began its inquiries of Whittaker regarding the contents of the Chirps, counsel objected, stating "continued objection Your Honor, this is referencing those initial, ummm, what we talked about before. Just preserving again for [unintelligible]." The trial court overruled the objection and the Commonwealth proceeded to question Whittaker about two series of Chirps wherein he stated he was a victim and did not deserve thirty years in prison. Considering the relatively short number of messages the Commonwealth used for impeachment and the length of time they were available to Whittaker before being introduced, we discern no abuse of discretion in the trial court's declining to exclude them in spite of their untimely production. The trial court, as gatekeeper of the evidence, is entrusted by the rules of discovery with the discretion to fashion a fair and just remedy to discovery violations. Here, the admission of Whittaker's own inconsistent statements was not inconsistent with substantial justice, and we cannot say the trial court abused its discretion.

Likewise, we discern no appreciable prejudice resulting from either the discovery violation or the Commonwealth's brief use of the Chirps for impeachment. The questioning concerning the contents of the Chirps spanned less than three of the Commonwealth's twenty-four-minute cross-examination during the nearly three-hour hearing. The trial court made no mention of this

12

exchange or the Chirps when it rendered its decision. And, absent the impeachment and taking Whittaker's claims of remorsefulness and amenability to partaking in treatment as true, there is no rational possibility his sentence would have been different. Whittaker admitted to committing 92 violent and sexual offenses against vulnerable victims and a family pet. He recorded thousands of his heinous acts, several of which were shown to the trial court. In describing its reasoning for the sentence, the trial court stated:

> So, there's a couple of cases that come along in a lifetime on the bench that leave one speechless. So, I don't know that there are words . . . to convey how horrific this behavior is in terms of community standard, more horrific than many.
> . . .
>
> The conscious abuse and tortuous abuse that was shown today, which is part of all of those charges is horrific. Physical and emotional . . . but to take it to a whole new level, to hide in a basement, causes such harm to society and passes on a behavior that ruins, just ruins. I don't know that these children will ever be un-ruined. That they can ever be fixed.
> . . .
>
> Because I think that if the jury had seen what we just saw today, 30 years wouldn't be in anybody's head. It's not in my head. Not especially after what I heard and saw today. And so, I am going to accept the argument of the Commonwealth.

The trial court then sentenced Whittaker to life in prison. Based on our review of the record, we agree with the trial court and cannot say the result of Whittaker's sentencing would have been different absent the introduction and brief use of his contradictory statements for impeachment purposes.

Although the failure to disclose the Chirps in a timely fashion constituted a discovery violation, Whittaker has not shown he was unduly prejudiced by the use of his own words. Given the totality of the evidence of his repeated and

13

horrific physical and sexual abuses of two vulnerable victims, one of whom was disabled, as well as the family cat, that were committed over multiple years and which he captured on video thousands of times, we are confident the trial court acted well within its considerable discretion in fixing his punishment within the range provided by law. The brief mention of a few messages he sent from jail did not sway the trial court's determination. His argument to the contrary is without merit. Thus, Whittaker has simply "failed to demonstrate prejudice of sufficient magnitude to warrant reversal." *Stieritz,* 671 S.W.3d 370.

Accordingly, the judgment of the Kenton Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen K. Schmidt
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General

14